CULPEPPER, Judge.
This is a suit for damages for breach of contract. The plaintiff, Robert H. Miller, donated to the defendant, State of Louisiana, a servitude to improve and reroute an existing highway through his rice fields. The servitude agreement provided that during the period between March 1 and October 15 the defendant would not disturb plaintiff’s irrigation system, unless it constructed alternate facilities to allow the uninterrupted operation of the system. Plaintiff contends the defendant breached this agreement, thereby causing loss of his rice crop and other damages. The district judge awarded plaintiff a total of $13,-660.85. Defendant appealed. Plaintiff answered the appeal, asking an increase in the award to the sum of $18,000.
The substantial issues are: (1) Did the provisions of the servitude agreement, requiring the Department of Highways to construct alternate irrigation facilities, include the requirement that the Department construct new flood gates to control the flow of water in the new irrigation canals? (2) Did plaintiff’s request for certain changes in the original plan, and a release signed by plaintiff in connection therewith, absolve the defendant from any damages caused by its failure to install flood gates in the new canals? (3) Should the award for damages be increased?
"The general "fkcts show that in 1963 plaintiff owned a large rice farm located on both sides of old Louisiana State Highway No. 91. The old highway ran east and west through this property and made a sharp turn to the south. Plaintiff’s irrigation system included canals on the north and west sides of the old highway, connected by flumes (pipes) running under the old highway to canals on the south and east sides. On the south and east sides, plaintiff had three wooden flood control gates to control the flow of water into the fields on the south and east sides of the road.
In July of 1963, plaintiff donated to the State a servitude for the purpose of widening, hardsurfacing and rerouting old Highway No. 91, so as to remove the sharp curve. Of course, the construction of the new highway route required changes in plaintiff’s irrigation system. New flumes had to be constructed under the new roadway and new canals provided on the south and east sides of the new highway to carry water to plaintiff’s fields on the south and east sides of the new road. In contemplation of possible interference with plaintiff’s irrigation system, during the period of time when it would be necesssary to flood his rice fields, the servitude agreement included the following provision:
“(6) Department agrees not to disturb Grantor’s irrigation systems during the period between March 1st and October 15th of any year to the extent of interfering with the proper operation of the systems, and should the Department deem it nec *773 essary to effect, during said period, the relocation and/or alteration of Grantor’s irrigation facilities, Department binds and obligates itself unto Grantor’s to provide at Department’s expense, an alternate or temporary adequate and proper provision for the continued and uninterrupted operation of said facilities during such relocation and/or alteration; it being understood and agreed that such alternate or temporary method shall not be undertaken by the Department, its Agents, employees and/or Contractors without first having obtained Grantor’s approval of the method of so providing for the continued and uninterrupted operation of said irrigation systems.”
The Department of Highways drew plans and specifications for the construction of the new highway and the necessary relocation and alteration of plaintiff’s irrigation system.[1] The State then entered into a construction contract with J. T. Richardson Contractor, Inc., who in turn subcontracted the actual work to the defendant, W. T. Cobb.[2]
Actual construction work was started by Cobb in about February of 1964. About the first of March, 1964, plaintiff requested an alteration in the Department’s plans for the “rice flume system”. The original plans called for one 30" flume and two 36" flumes under the new highway. Plaintiff requested this be changed to one 36", one 30" and one 24" flume; and that the location of one flume be changed. These changes also eliminated the construction of about 117 feet of new irrigation canal along the north side of the new highway. Plaintiff contends these changes resulted in a saving of about $1,200 to the Department. The Department admits a saving of $167.
The Department’s engineers testified they were reluctant to make these changes for fear that some damages might result from the improper functioning of the irrigation system. However, they agreed to the changes but requested that plaintiff sign a letter, dated March 1964, agreeing to the changes and assuming any increase in cost which might result. This is the letter which defendant now contends is a release of liability for all damages resulting from any defect in the entire irrigation system. This contention is later discussed in more detail.[3]
As Mr. Cobb continued construction of the highway and the new irrigation system during March, April and May of 1964, *774 plaintiff prepared and planted his rice fields. Apparently, Mr. Cobb and plaintiff had an understanding that the new irrigation system would be completed on June 1, 1964, at which time plaintiff’s crop would be ready for flooding. As that date approached, plaintiff noticed that new flood control gates were not being constructed in the new irrigation canals. He talked to Mr. Cobb and was informed that the plans did not provide for any flood control gates. Plaintiff then contacted the highway inspector and the project engineer. Plaintiff testified he was advised by the highway engineer that no flood control gates were necessary in the new system. Plaintiff says he also contacted the Department right of way agent, who recognized that flood control gates were necessary and stated that this appeared to be a defect in the plans.
During his unsuccessful attempts to have the Highway Department install flood control gates, plaintiff began soon after June 1 to try to control the flow of water into the various rice fields by placing sand bags in the canals and using other improvised methods. These methods were not very successful. The new levees along the canal were made of loose dirt, which washed around the sand bags. The inability to control the level and flow of water in the canals caused too much water in some fields, where wash-outs occurred, and not enough water in others. The evidence shows clearly that plaintiff’s rice crop was seriously damaged due to lack of flood control gates.
Finally, plaintiff decided to install flood gates himself. He contracted with Mr. Cobb to install metal gates, set in concrete. Installation was completed about June 29, but considerable damage had already been done to plaintiff’s rice crop.
The trial judge correctly found that the Department of Highways breached the above quoted paragraph 6 of the servitude agreement. The Department expressly agreed that it would not disturb plaintiff’s irrigation system during the period between March 1 and October 15, unless it provided alternate or temporary facilities for the continued and uninterrupted operation of the irrigation system during this period of time. Despite these provisions of the contract, the Department did disrupt plaintiff’s irrigation system during the prohibited season. It is true an alternate system was constructed, but, due to a defect in the plans, no flood control gates were installed in the new canals to control the flow of water into plaintiff’s rice fields. The evidence shows conclusively that flood gates were necessary for the operation of the irrigation system. It was the lack of such gates which caused the damages to plaintiff’s rice crop.
The Department contends the servitude agreement did not require it to furnish floodgates. This argument is based on the following language in the first paragraph of the agreement:
“ ‘The right of way or servitude hereby granted shall be limited to the width and location as designated on the construction plans for the aforesaid highway project approved by the Chief Engineer for the said .Department of Highways, which plans are on file in the office of the Department in the City of Baton Rouge, Louisiana, which said plans are made a part hereof by reference.’ (Emphasis added)”
Defendant contends that since the plans referred to did not provide for floodgates, none were required by the agreement. We cannot agree. The above quoted reference to plans on file in Baton Rouge was for the purpose of giving the exact location of the servitude. This did not alter the express language of paragraph 6 of the agreement, quoted above, requiring alternate facilities for uninterrupted operation of the irrigation system. The evidence is clear that floodgates were necessary to operate the system, both under the Department’s original plans and under the changes requested by plaintiff. The failure to provide flood *775 gates was a defect in the Department’s plans, of which plaintiff was not aware and to which he did not agree.
The Department’s principal defense is an exception of res judicata. It contends the changes requested by plaintiff from the original plan, and the release signed in connection therewith, constituted a new agreement as to the entire system and exonerated the Department from any damages resulting from any defect in the entire plan.
The trial judge correctly held the requested changes, and the release executed in connection therewith, pertained only to the flumes. The necessity for floodgates was not affected in any manner whatsoever by the changes requested. Actually, the original plan itself did not provide for floodgates. In any event, the release in question did not relieve the Department from its obligation under the servitude agreement to provide a continuously operating alternate irrigation system.
We will now address ourselves to the quantum of damages awarded. In its brief filed in this court, the Department does not seriously question the lower court award. However, plaintiff has answered the appeal and seeks an increase in the quantum of damages.
We have no difficulty in finding that the award by the trial judge should not be reduced. Plaintiff submitted detailed and thorough evidence showing the greater amount of rice raised in other years on these same fields, as compared to the year the crop was damaged. He showed that in his attempts to minimize damages he used extra labor, extra' fertilizer, and additional weed poisoning. He also had additional pumping expenses. Of course, he is entitled to the cost of the three floodgates, the sum of $774.08, which were omitted from the Department’s plans.
As to plaintiff’s answer to the appeal, we have carefully reviewed the evidence and find no manifest error in the trial court’s award.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.

. The relevant sheets of these plans were introduced in evidence by the defendant, identified as Dept. Exhibits 4 and 5, with leave to substitute copies thereof. Apparently these copies were never furnished and are not in the record. See the district court clerk’s letters at Tr. 211. In the absence of any contention by the parties on appeal that this deficiency in the record is material, we have decided the case without seeing these exhibits. We accept the testimony of defendant’s witnesses that these original plans did not provide for any floodgates.

. The Department of Highways stipulated that these two contractors simply followed plans prepared by the Department, which assumed full responsibility for any damages. Hence, the lower court judgment dismisses plaintiff’s suit as to the two contractors and is against the State of Louisiana alone.

.The letter dated March 5, 1964, addressed to the State’s engineer, reads as follows:
With reference to the above captioned project this is to request that the rice flume system called for on the plans be changed according to the attached schedule.
We feel that this alternate arrangement will better suit our needs and will function properly considering the amount of water to be carried by each structure.
According to the Project Engineer, the alternate arrangement should result in a slight decrease in cost. Should an increase in cost result, however, we will bear this additional expense. It should also be noted that the rice canal called for between Station 371/81 to 373/02 left may be omitted.